UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RYAN PATRICK RUCKER,

          Petitioner,

  v.                                   CAUSE NO. 3:19-CV-201 DRL-MGG

WARDEN,

          Respondent.

## OPINION AND ORDER

Ryan Patrick Rucker, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for child molestation under Case No. 35C01-1110-FA-217. Following a jury trial, on May 21, 2012, the Huntington Circuit Court sentenced Mr. Rucker to twenty-five years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence presented at trial:

> On October 18, 2011, Rucker was charged with child molesting. On March 12, 2012, pursuant to a plea agreement, Rucker pleaded guilty to Class A felony child molesting. The plea agreement stated that Rucker was satisfied with his first trial counsel's representation and that counsel had "done everything" that Rucker asked him to do and had "not done anything" that Rucker had asked him "not to do." Rucker also admitted that the facts in the charging information and probable cause affidavit "are true and constitute a factual basis for [his] plea of guilty." In the plea agreement, Rucker stated that he knew that the trial court would not accept a guilty

plea from anyone who claimed to be innocent, that he did not make a claim of innocence, and that he was guilty of the crime to which he was pleading guilty.

A guilty plea hearing took place on March 12, 2012, during which Rucker admitted that while staying overnight at his friends' home, he entered the bedroom of their eight-year-old daughter, approached her while she was asleep, pulled down her underwear, and licked her vagina. When the child told him to stop, Rucker left the room. The trial court found that there was a factual basis for Rucker's guilty plea and that his guilty plea was made freely and voluntarily.

On March 20, 2012, Rucker's first trial counsel moved to withdraw his appearance. On March 21, 2012, Rucker filed several motions, including a motion to withdraw his guilty plea. On March 26, 2012, the trial court denied Rucker's motions, granted his first trial counsel's motion to withdraw, and appointed Rucker's second trial counsel.

On April 23, 2012, Rucker filed a second motion to withdraw his guilty plea. A hearing on his second motion took place on May 7, 2012, during which Rucker stated that he felt he had been "unduly influenced" when he had admitted to the factual basis as part of his guilty plea. Rucker explained that when he was offered the plea agreement, he was told that if the case went to trial, he would likely lose and could be sentenced to fifty years. The trial court asked Rucker how that unduly influenced him, to which Rucker replied, "The way it was proposed to me I suppose your honor. I felt compelled . . . ."

On May 10, 2012, the trial court denied Rucker's motion. On May 21, 2012, a sentencing hearing took place during which the trial court accepted Rucker's guilty plea and sentenced him to twenty-five years imprisonment.

ECF 18-6 at 2-3. *Rucker v. State*, 96 N.E.3d 665 (Ind. App. 2018).

Mr. Rucker argues that he is entitled to habeas relief because his guilty plea was not knowing, voluntary, and intelligent due to his lack of understanding that he would be classified as a sexually violent predator and would be subject to mandatory lifetime parole at the end of his term of incarceration. He asserts that trial counsel was ineffective for not informing him of the sexually violent predator classification, for allowing him to

2

take a polygraph examination, and for not advising him to challenge the denial of his motion to withdraw the guilty plea on appeal.

As discussed below, these claims are procedurally defaulted, but Mr. Rucker may pursue the claim that trial counsel was ineffective for not informing him of the sexually violent predator classification as an exception under *Martinez* for procedural default. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012). As a result, the court will defer a final decision on the petition and will allow the parties an opportunity to address these specific issues and whether an evidentiary hearing is necessary to resolve them.[1]

Mr. Rucker also argues that he did not receive adequate due process during post-conviction proceedings because the post-conviction court denied his requests for subpoenas and excluded his exhibits from evidence. Procedural errors during such proceedings are not a cognizable basis for habeas relief because there is no constitutional right to state post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *Tabb v. Christianson*, 855 F.3d 757, 767 (7th Cir. 2017).

DISCUSSION

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). For a federal court to hear his claims, a habeas petitioner must have fully and fairly presented his federal claims to the state

---

[1] On related note, Mr. Rucker filed a motion for a hearing to develop evidentiary support for each of his claims and assertions of exceptions for procedural default. ECF 26. The court denies this motion to the extent Mr. Rucker seeks an evidentiary hearing to resolve issues other than those related to the claim that trial counsel should have advised him of the sexual predator classification.

3

courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceeding." *Lewi*s, 390 F.3d at 1025. "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory. *Id.*

Mr. Rucker presented his claims that trial counsel was ineffective for allowing him to take a polygraph examination and for not advising him to challenge the denial of his motion to withdraw the guilty plea to the Huntington Circuit Court and the Indiana Court of Appeals, but not to the Indiana Supreme Court. PCR App. Vol. VI at 2-15; ECF 18-5; ECF 18-7. Mr. Rucker presented his claims related to the sexually violent predator classification on appeal, but not to the Huntington Circuit Court. *Id.* Therefore, Mr. Rucker's claims are procedurally defaulted.

Mr. Rucker argues that the court should excuse this procedural bar under the fundamental miscarriage of justice exception. A habeas petitioner can overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). Under this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*,

513 U.S. 298, 324 (1995). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536–37. Mr. Rucker argues that this exception applies because trial counsel refused to use his fiancé as a witness and advised him to take a polygraph examination.[2] ECF 32 at 12-13. These allegations do not suggest that Mr. Rucker is actually innocent of his crime of conviction. Therefore, the fundamental miscarriage of justice exception does not excuse the procedural bar.

Mr. Rucker argues that the court should excuse the procedural bar under the cause-and-prejudice exception because the law library at the Wabash Valley Correctional Facility did not have the necessary materials for him to prepare his filings in state court. ECF 21 at 6. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" that prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492

---

[2] Mr. Rucker does not assert that his fiancé's testimony is new evidence of actual innocence, but, even if he had, this assertion would fall short. He represents that his fiancé would have testified that she saw him sitting on the floor of the victim's bedroom speaking with the victim, who was lying in bed, on her way to the bathroom and that Mr. Rucker left the bedroom a few minutes later. PCR App. Vol. VI at 4-6. This testimony would not satisfy the high evidentiary burden for actual innocence given that the fiancé only briefly observed events in the bedroom and that Mr. Rucker did not need much time to commit the crime. The fiancé also had significant credibility concerns due to her relationship with Mr. Rucker and her initial account that she "hadn't seen anything" and "did not want to get involved." *Id.*

(1986). Mr. Rucker does not explain how limited access to legal materials prevented him from presenting any claim. Moreover, Mr. Rucker pursued post-conviction relief in state court and habeas relief in federal court without counsel. ECF 10; ECF 18-3; ECF 18-4. The filings in these proceedings are typed, reasoned, lengthy, organized, and timely with appropriate citations to legal authority and the evidentiary record. *See e.g.,* ECF 18-5; ECF 18-7; ECF 21. Therefore, the court cannot find that limited access to legal resources prevented Mr. Rucker from pursuing claims in state court.

Mr. Rucker also argues that the court should excuse the procedural bar under the cause-and-prejudice exception because he received ineffective assistance of counsel at the post-conviction stage. As a general rule, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as cause." *Maples v. Thomas*, 565 U.S. 266, 280 (2012). "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Brown v. Brown*, 847 F.3d 502 (7th Cir. 2017). This exception—called the *Martinez* exception here—applies only to ineffective assistance of trial counsel claims that weren't raised at the initial level post-conviction proceedings. Mr. Rucker's claim that trial counsel should have informed him of the sexually violent predator classification before his guilty plea is the only claim that satisfies this parameter.

The Warden argues that *Martinez* doesn't apply to this claim because Mr. Rucker decided not to present it after including it in his initial petition for post-conviction relief. The Warden contends that this procedural default is not attributable to ineffective assistance of counsel and that Mr. Rucker's decision to amend the petition and omit the

claim was a strategic decision. The record reflects that Mr. Rucker raised his concern regarding the sexually violent predator classification in this petition.[3] ECF 21-2 at 11-12.

In *Martinez*, the Supreme Court of the United States explained its reasoning for crafting the exception as follows:

> [A] key difference between initial-review collateral proceedings and other kinds of collateral proceedings [is that when] an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim. This Court on direct review of the state proceeding could not consider or adjudicate the claim. And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims.
>
> * * *
>
> The same would be true if the State did not appoint an attorney to assist the prisoner in the initial-review collateral proceeding. The prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law. While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record.
>
> * * *
>
> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did

---

[3] In the initial petition for post-conviction relief, Mr. Rucker did not frame this claim as an ineffective assistance of trial counsel claim, though the court understands the Warden's broader point that Mr. Rucker had the necessary information to do so.

> not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).

*Id.* at 10-14.

The court first considers whether Mr. Rucker should be considered counseled or uncounseled for purposes of *Martinez*. On August 20, 2012, Mr. Rucker filed his initial petition for post-conviction relief. ECF 18-3. The Huntington Circuit Court appointed the state public defender's office to represent him, and an attorney entered an appearance. *Id.* On August 13, 2014, the attorney prepared a memorandum on the merits of Mr. Rucker's post-conviction case. Direct Appeal App. 17-19. He did not specifically address the sexually violent predator designation but concluded that Mr. Rucker's case lacked merit and withdrew from the case. *Id.* Mr. Rucker continued to litigate his post-conviction case *pro se*, including amending his petition, participating in an evidentiary hearing, and submitting proposed findings of fact and conclusions of law. ECF 18-3.

"The Sixth Amendment ensures that defendants facing incarceration will have counsel at all critical stages of the criminal process." *Schmidt v. Foster*, 911 F.3d 469, 478 (7th Cir. 2018). "Broadly, [the Supreme Court] has described a critical stage as a step of a criminal proceeding that holds significant consequences for the accused." *Id.* "Alternatively, though still broadly, the Court has said that whether a stage is critical depends on whether, during a particular confrontation, the accused faces prejudice that counsel could help avoid." *Id.* The degree to which Sixth Amendment jurisprudence applies to the *Martinez* exception is unclear, but the court is satisfied that a petitioner who

8

did not have counsel during any critical stage of post-conviction proceedings should be considered uncounseled for purposes of *Martinez*.

The Warden argues that the *Martinez* exception does not apply when the uncounseled petitioner purposefully omits a claim, reasoning that such an omission cannot be attributed to lack of effective counsel. The Supreme Court's primary concern in *Martinez* was that substantial claims of ineffective assistance of trial counsel should receive meaningful consideration by a court on at least one occasion. The Warden's position does not account for the reality that effective counsel would likely be far more proficient at identifying the claims with the greatest likelihood of success and may well decide to include claims that an uncounseled petitioner would omit. Though it is fair to assume that effective counsel would not omit a substantial claim without a tactical reason, the same cannot be said of an uncounseled petitioner.

Additionally, the Warden's description of Mr. Rucker's decision as strategic implies that the court should evaluate the decisions of uncounseled petitioners as it would evaluate professional counsel under *Strickland*. The court is not persuaded that that particular standard is appropriate for uncounseled petitioners. Further, though the *Martinez* exception for uncounseled petitioners may prove to have some breadth, *Martinez* requires that an uncounseled petitioner have a substantial claim of ineffective assistance of trial counsel to qualify. *Martinez*, 566 U.S. at 14. ("a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit"). Consequently, the court will consider whether this claim has some merit.

Mr. Rucker argues that he is entitled to habeas relief because trial counsel was ineffective for not informing him that his guilty plea would result in his classification as a sexually violent predator by operation of law, which entailed a mandatory lifetime term of parole. He maintains that he would not have pleaded guilty if he had known he would be subjected to a lifetime term of parole.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. "[T]o satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

"[A] guilty plea is voluntary and intelligent if the defendant enters the plea with full awareness of its direct consequences." *Virsnieks v. Smith*, 521 F.3d 707, 715 (7th Cir. 2008). "Thus, although a defendant must be informed of the direct consequences flowing from a plea, he need not be informed of collateral consequences." *Id.* Consequences are direct if they are the "immediate, and automatic consequences of the guilty plea." *Id.*

On March 12, 2012, Mr. Rucker pleaded guilty to child molestation after entering a plea agreement for a sentence of twenty-five years of incarceration. PCR Ex. B. He also signed a Written Notice and Waiver of Rights, which stated:

> If you are pleading guilty to a class A felony offense of Rape, Criminal Deviate Conduct, Child Molesting, or Vicarious Sexual Gratification, then: The Court shall determine if you are a Sexually Violent Predator.[4] If you are determined to be a Sexually Violent Predator, you will have to register as a convicted sex offender for life;
>
> If you are determined to be a Sexually Violent Predator, you will be placed on parole for the remainder of your life after you are released form incarceration;
>
> If you are determined to be a Sexually Violent Predator, you may petition the Court to consider whether you should no longer be considered a Sexually Violent Predator. You cannot file this petition earlier than ten (10) years after the Court made its finding that you are a Sexually Violent Predator or after your release from incarceration.

*Id.*

Mr. Rucker argues that this language suggests that the trial court had some discretion to decide whether he qualified as a sexually violent predator rather than an automatic classification by operation of law as set forth in Indiana Code § 35-38-1-7.5(b). The Warden refers to this designation as a collateral consequence, implying that Mr.

---

[4] It is unclear why the Written Notice and Waiver of Rights form included this sentence given its seeming contradiction with the statutory language regarding automatic classification by operation of law, but review of the statute reveals two possible explanations. First, this conditional language tracks the language of the pre-2007 version of the statute, which states, "At the sentencing hearing, the court shall determine whether the person is a sexually violent predator under subsection(b)." Ind. Code § 35-38-1-7.5(d) (2006). Second, the current version of the statute allows the court discretion under certain circumstances to find that an individual convicted of child molestation or vicarious sexual gratification is not a sexually violent predator. Ind. Code § 35-38-1-7.5(h). This exception contemplates sex offenses involving a minor where the accused and the victim are close in age and in a dating relationship and so bears no relevance to Mr. Rucker's case.

11

Rucker did not have the constitutional right to be advised of this designation before his guilty plea. To the Warden's point, this circuit has held that a mandatory sex offender registration order is a collateral consequence and that collateral consequences are "irrelevant under the Sixth Amendment; such advice is categorically excluded from analysis as professionally incompetent, as measured by *Strickland*." *Chavarria v. United States*, 739 F.3d 360, 362 (7th Cir. 2014); *Virsnieks v. Smith*, 521 F.3d 707, 715 (7th Cir. 2008).

Mr. Rucker also contends that his trial counsel should have advised him that he would be subjected to a lifetime term of probation as a result of this classification and the guilty plea. "When a defendant considers the government's offer of a plea agreement, a reasonably competent counsel will attempt to learn all of the facts of the case and to make an estimate of a likely sentence." *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir. 1996). "It is deficient performance for an attorney to fail to provide good-faith advice about the sentencing consequences of a guilty plea." *Id.* at 939–40. Other courts have held the failure to inform a criminal defendant of a mandatory term of parole renders the guilty plea invalid. *See, e.g., Johnson v. DeRobertis*, 718 F.2d 209, 210 (7th Cir. 1983); *Baker v. Finkbeiner*, 551 F.2d 180, 184 (7th Cir. 1977); *see also Carter v. McCarthy*, 806 F.2d 1373, 1375 (9th Cir. 1986). Courts have also found that advising a criminal defendant that a sentencing consequence is possible when it is virtually certain to occur constitutes deficient performance. *See United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) ("[B]efore Rodriguez–Vega pled guilty [counsel] never informed her that she faced anything more than the mere potential of removal. Because the immigration consequences of her plea were clear and her removal was virtually certain, we hold

counsel's performance constitutionally ineffective."). After careful review, the court has found nothing in the record as it exists today to suggest that Mr. Rucker knew that he would be subjected to a mandatory term of lifetime parole.[5] Subject to a fuller record, it appears that Mr. Rucker can make a substantial showing regarding deficient performance of trial counsel.

The court next considers whether Mr. Rucker has made a substantial showing that he would have proceeded to trial but for his lack of information regarding the mandatory term of parole. To support this proposition, Mr. Rucker has attested, "Had Rucker known that SVP status with lifetime registry and parole were mandatory, he would not have pleaded guilty in the first place." ECF 21 at 12, 23. The state court record also includes a transcript in which the prosecution said that, during plea negotiations, Mr. Rucker asked for a sentence that would not include a term of probation. PCR App. Vol. V at 51. Though probation and parole may be separate legal concepts, a layperson might reasonably believe them to be interchangeable terms. *See e.g., State v. Vanderkolk*, 32 N.E.3d 775, 779 (Ind. 2015) (detailing substantial similarity between probation and parole). It is also unclear why a criminal defendant would adamantly oppose probation but willingly accept a mandatory term of lifetime parole to be served in addition to his term of incarceration.

---

[5] The record today includes correspondence between Mr. Rucker and trial counsel from before the guilty plea, a motion to enter a guilty plea, and the plea hearing transcript. These documents contain no indication that Mr. Rucker would be subject to a mandatory term of lifetime parole, including any colloquy at the plea hearing.

The record also contains correspondence from Mr. Rucker indicating his opposition to the plea agreement in the weeks that immediately preceded and followed the entry of his guilty plea. On February 20, 2012, Mr. Rucker wrote, " Where I do take issue is when you, my attorney, try to convince me that I should just take the crumbs that they are offering me and be [grateful]," and, "I believe the [offer] to be excessive and vengeful." PCR App. Vol. III at 20, 23. Five days after the guilty plea, Mr. Rucker informed trial counsel that he had filed a motion to withdraw his plea and asked trial counsel to withdraw his appearance. *Id.* at 38. Mr. Rucker's uncertainty regarding his guilty plea further suggests that he would have decided against pleading guilty if he had known that it would result in a lifetime term of parole.

On this record, Mr. Rucker seems to have made a substantial showing of an ineffective assistance of trial counsel claim to qualify under the *Martinez* exception to procedural default. The court clarifies that such a finding would not entitle Mr. Rucker to habeas relief but would instead grant him an opportunity to prove his claim that trial counsel should have advised him that he would be subject to a lifetime term of parole as a result of his guilty plea. Though the parties have already addressed these issues to some degree, this order substantially narrows the material issues in this case, and the remaining issues are novel and reasonably complex. Consequently, the court will offer the parties an additional opportunity to address whether *Martinez* should apply to this claim and whether they believe that an evidentiary hearing is necessary to resolve this case.

For these reasons, the court:

(1) GRANTS the Warden until July 30, 2021, to file a brief in response to this order;

(2) GRANTS Ryan Patrick Rucker until August 30, 2021, to file a reply to the Warden's brief;

(3) DENIES the motion for an evidentiary hearing (ECF 26) to the extent that it pertains to matters that do not relate to the remaining claim; and

(4) DENIES as UNNECESSARY the motion for status (ECF 33).

SO ORDERED.

July 1, 2021                                                  *s/ Damon R. Leichty*
                                                             Judge, United States District Court