UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RYAN PATRICK RUCKER,

        Petitioner,

    v.                                  CAUSE NO. 3:19-CV-201 DRL

WARDEN,

        Respondent.

OPINION AND ORDER

Ryan Patrick Rucker filed a *habeas corpus* petition challenging his conviction for child molestation in the Huntington Circuit Court under Case No. 35C01-1110-FA-217. ECF 1, ECF 10. In the petition, he advanced five grounds for relief. On July 1, 2021, the court dismissed four of these grounds for procedural reasons or for lack of merit. ECF 34. That left his claim that trial counsel rendered ineffective assistance by not informing him that he would be subject to lifetime mandatory parole as a sexually violent predator before his guilty plea. To support this claim, Mr. Rucker represented that, if he had known this penalty, he would not have pleaded guilty. ECF 21 at 12.

Though this claim was also procedurally defaulted, the court credited Mr. Rucker's argument that the procedural default should be excused because he did not have post-conviction counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012). "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. "[A] prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-

counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

As a preliminary ruling, the court reasoned that counsel's failure to inform a criminal defendant of a mandatory lifetime parole could render a guilty plea invalid. ECF 34 at 10-14. According to Mr. Rucker, though he was informed of the possibility of mandatory lifetime parole, he was not informed that it would occur by automatic operation of law if he pleaded guilty. More specifically, he was told that sexually violent predators are subject to mandatory lifetime parole but that the sentencing court would determine if he was a sexually violent predator. At least one other court had found that advising a criminal defendant that a sentencing consequence is possible when it is virtually certain to occur constituted deficient performance by trial counsel. *See United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015). The court also observed the presence of evidence in the state court record that corroborated Mr. Rucker's account.

The Warden disputed Mr. Rucker's factual account and further denied that the mandatory term of lifetime parole was a direct sentencing consequence. On this basis, the court appointed counsel for Mr. Rucker and set an evidentiary hearing for July 21, 2022, to determine (1) the factual issue of what Mr. Rucker knew about the mandatory lifetime parole requirement before entering a guilty plea and; (2) the legal issue of whether mandatory lifetime parole under Indiana more closely resembled traditional parole or sex offender registration requirements. ECF 39, ECF 53.

In May 2022, the Supreme Court issued an opinion on whether a habeas petitioner asserting a claim that qualifies under the *Martinez* exception is entitled to an evidentiary

hearing on the underlying claim. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1739-40 (2022). In light of *Shinn*, the Warden moved to vacate the evidentiary hearing. ECF 57. On June 27, 2022, the court vacated the evidentiary hearing, though noting that *Shinn* did not resolve this case. The court observed that the state court record does include, if only incidentally, some evidence to support Mr. Rucker's remaining claim. Additionally, the court asked for further briefing on the legal issues of (1) whether advising a criminal defendant that a term of parole is possible when it is virtually certain to occur should constitute deficient performance as suggested by *Rodriguez-Vega*, 797 F.3d at 788; and (2) whether Mr. Rucker's term of lifetime parole more closely resembles the direct consequence of parole as contemplated in *Jones v. Cunningham*, 371 U.S. 236, 242 (1963), and in *Stanbridge v. Scott*, 791 F.3d 715, 720 (7th Cir. 2015), or the collateral consequence of sex offender registration as contemplated in *Chaidez v. United States*, 568 U.S. 342, 349 n.5 (2013), and in *Virsnieks v. Smith*, 521 F.3d 707, 715 (7th Cir. 2008).

The parties have briefed these issues. ECF 67, ECF 68. Consequently, the court will now consider the merits of Mr. Rucker's claim that trial counsel provided ineffective assistance by not informing him that he would necessarily be subject to lifetime mandatory parole as a sexually violent predator before his guilty plea.

## FACTUAL BACKGROUND

On October 18, 2011, Mr. Rucker was charged with child molesting. Vol. III of PCR Appeal App. 2. On November 23, the prosecution offered to cap the initial sentence at thirty-five years in exchange for a guilty plea. *Id.* at 5. On December 8, trial counsel suggested that, based on conversations with the prosecution, Mr. Rucker might receive a

better plea offer if he took a polygraph examination. *Id.* at 6. On December 10, Mr. Rucker indicated his willingness to take a polygraph examination but expressed concern about the examiner's identity. *Id.* at 7-9. He was particularly concerned about an examiner who was friends with one of the prosecuting attorneys. *Id.* He described the plea offer as "ridiculous" even if he was guilty. *Id.* On December 17, Mr. Rucker expressed general reluctance to accept a plea offer. *Id.* at 10-12. He indicated that he no longer wanted to take a polygraph examination due to the risk that he would fail. *Id.* He believed that the prosecution had no evidence against him and asked to move for a speedy trial. *Id.*

On January 6, 2012, trial counsel asked for a better plea offer given the brief and singular nature of the child molestation. *Id.* at 13-14. The prosecution agreed in part with trial counsel's assessment of the facts and offered a cap of 25 years. *Id.* On February 6, Mr. Rucker signed a polygraph agreement in which he agreed to be examined by "Steve Adding." *Id.* at 15. On February 15, the polygraph examination occurred, and Mr. Rucker wrote a letter apologizing to the victim, characterizing his recollection as "foggy," but noting that he never intended to hurt her. *Id.* at 17; Vol. V of PCR Appeal App. 22. On February 20, Mr. Rucker indicated that "Steve Adang" conducted the polygraph examination and that it did not go well. Vol. III of PCR Appeal App. 19-26. He "took issue" with trial counsel's efforts to persuade him to "take the crumbs" offered by the prosecution. *Id.* He further indicated that he did not want to go to trial but found the plea offer to be "excessive and vengeful" and believed a plea offer of a ten-year or eight-year cap would be more appropriate. *Id.* On March 5, trial counsel noted that the identification of "Steve Adding" rather than "Steve Adang" was a typographical error. *Id.* at 27.

On March 12, 2012, Mr. Rucker filed a motion to enter a plea of guilty to child molestation as a Class A felony based on a plea agreement for the 25-year cap. *Id.* at 28-34. According to a post-conviction affidavit, on the morning of March 12, the prosecution had offered 25 years and five years of probation, and Mr. Rucker agreed only on the condition that he did not want "to do any probation." Vol. VII PCR Appeal App. 12-13. He also signed a Written Notice and Waiver of Rights, which stated:

> If you are pleading guilty to a class A felony offense of Rape, Criminal Deviate Conduct, Child Molesting, or Vicarious Sexual Gratification, then: The Court shall determine if you are a Sexually Violent Predator. If you are determined to be a Sexually Violent Predator, you will have to register as a convicted sex offender for life;
>
> If you are determined to be a Sexually Violent Predator, you will be placed on parole for the remainder of your life after you are released form incarceration;
>
> If you are determined to be a Sexually Violent Predator, you may petition the Court to consider whether you should no longer be considered a Sexually Violent Predator. You cannot file this petition earlier than ten (10) years after the Court made its finding that you are a Sexually Violent Predator or after your release from incarceration.

Vol III of PCR Appeal App. 35-37. From the record, it appears the prosecution drafted this document. The trial court advised Mr. Rucker of his constitutional rights and that he would be sentenced to a term of incarceration between 20 and 50 years and a fine up to $10,000. Vol. V of PCR Appeal App. 26-36. As the factual basis for the guilty plea, Mr. Rucker admitted the following:

> On or about August 26, 2011, my girlfriend and I were staying with some friends at their home located in Huntington County. Also in the home was our friends' eight (8) year old daughter . . . That night, my girlfriend and I slept in the living room. Around 4:00 a.m., on August 27, 2011, everyone was woken up by a bat in the house. Later, after everyone had fallen back

to sleep, I entered [the victim's] bedroom, shut the door and walked over to where [the victim] was sleeping. I then pulled [the victim's] underwear down and I licked [the victim's] vagina. [The victim] told me to stop and I left her bedroom.

Vol. III of PCR Appeal App. 31-32. The trial court took the guilty plea and plea agreement under advisement. Vol. V of PCR Appeal App. 26-36.

On March 17, 2012, Mr. Rucker informed trial counsel that he intended to withdraw the guilty plea and asked for trial counsel to withdraw his appearance. Vol. III of PCR Appeal App. 38-39. On March 20, trial counsel moved to withdraw his appearance. *Id.* at 46-47. On March 21, Mr. Rucker moved to withdraw the guilty plea and for a fast and speedy trial. *Id.* at 41-44. On March 26, the trial court found Mr. Rucker's motions to be invalid and appointed a different attorney for Mr. Rucker. ECF 18-1. On April 23, newly-appointed trial counsel filed a motion to withdraw the guilty plea. Vol. IV of PCR Appeal App. 3.

On May 7, 2012, the trial court heard argument on the motion to withdraw the guilty plea. Vol. V of PCR Appeal App. 41-54. According to trial counsel, Mr. Rucker sought to withdraw the plea because he wished to maintain his innocence; and because he felt unduly influenced to accept the plea due to the confusion regarding the identity of the polygraph examiner and the representations of former trial counsel that led him to feel as he had no meaningful choice. *Id.* Mr. Rucker clarified that former trial counsel told him that he could receive a 50-year sentence if he proceeded to trial. *Id.* The prosecution described the plea negotiations, noting that Mr. Rucker "did not wish specifically to be

on probation at any time." *Id.* On May 10, the trial court denied the motion to withdraw the plea due to the lack of evidence suggesting coercion. ECF 18-1.

On May 21, the trial court accepted the guilty plea and sentenced Mr. Rucker to 25 years with no probation. Vol. V of PCR Appeal App. 55-60. In accordance with Indiana law, Mr. Rucker was deemed a "sexually violent predator" by operation of law because of his conviction and was thus subject to lifetime parole. *See* Ind. Code § 35-38-1-7.5(b)(1)(C). On December 31, 2016, Mr. Rucker wrote, "Had I known [the sexually violent predator designation] could be automatically imposed, and that it carried lifetime registration, I <u>NEVER</u> would have agreed to that!" Vol. II of Direct Appeal App. 36-39.

STANDARD

If a state court adjudicates a claim on the merits, federal courts may grant habeas relief on that claim only if the petitioner demonstrates that the "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). These standards require substantial deference to state court decisions and are "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

In contrast, "[w]hen no state court has squarely addressed the merits of a habeas claim, . . . we review the claim under the pre-AEDPA standard of 28 U.S.C. § 2243, under which we dispose of the matter as law and justice require." *Morales v. Johnson*, 659 F.3d 588, 599 (7th Cir. 2011). "This is a more generous standard: we review the petitioner's

constitutional claim with deference to the state court, but ultimately *de novo*." *Id.* No state court has addressed the merits of this claim, so the court will consider it *de novo*.

ANALYSIS

Mr. Rucker argues that he is entitled to habeas relief because trial counsel was ineffective by not informing him that his guilty plea would result in his classification as a sexually violent predator by operation of law, which entailed a mandatory lifetime term of parole. He maintains that he would not have pleaded guilty had he known he would be subject to a lifetime term of parole.

At this stage, the court has narrowed the legal issues to (1) whether Mr. Rucker's term of lifetime parole more closely resembles parole than it resembles sex offender registration; and (2) if so, whether advising Mr. Rucker that lifetime parole was possible when it was virtually certain to occur could constitute deficient performance, which turns on whether parole is a direct consequence. The material factual issues have been similarly narrowed to (1) what Mr. Rucker knew about the lifetime parole requirement before entering a guilty plea, and (2) whether there is a substantial probability that, but for this lack of information, he would not have pleaded guilty and would have insisted on a trial.

The court first considers the definition of lifetime parole under Indiana law. Broadly speaking, parole is the "the conditional release of a prisoner from imprisonment before the full sentence has been served." *Parole*, *Black's Law Dictionary* (2019). "[P]arole is an established variation on imprisonment of convicted criminals. . . . The essence of parole is release from prison, before the completion of a sentence, on the condition that

the prisoner abides by certain rules during the balance of the sentence." *Samson v. California*, 547 U.S. 843, 850 (2006). Many of these rules are common among parolees:

> [T]he custody and control of the Parole Board involves significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally. Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. He cannot drive a car without permission. He must periodically report to his parole officer, permit the officer to visit his home and job at any time, and follow the officer's advice. He is admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest, and temperate life. Petitioner must not only faithfully obey these restrictions and conditions but he must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison to serve out the very sentence he claims was imposed upon him in violation of the United States Constitution. He can be rearrested at any time the Board or parole officer believes he has violated a term or condition of his parole, and he might be thrown back in jail to finish serving the allegedly invalid sentence with few, if any, of the procedural safeguards that normally must be and are provided to those charged with crime.

*Jones*, 371 U.S. at 242. Variations on parole include special parole and mandatory supervised release. "Courts have described special parole as being entirely different from and in addition to ordinary parole, as it *follows* the completion of ordinary parole and subjects the defendant to reincarceration during the entire special parole term if its conditions are violated." *Matamoros v. Grams*, 706 F.3d 783, 786 (7th Cir. 2013). "Supervised release, in contrast to parole, consists of restrictions, imposed by the judge at sentencing, called conditions or terms of supervised release, that are to take effect when the defendant is released from prison and continue for a specified term of years (which can be life)." *United States v. Thompson*, 777 F.3d 368, 372 (7th Cir. 2015).

According to Mr. Rucker, lifetime parole effectively equates to special parole, and violating the conditions of parole could result in reincarceration subject to the lesser procedural due process protections of a parole board. The Warden argues that lifetime parole under Indiana law is more akin to sex offender registration requirements and can result in a subsequent term of incarceration only upon conviction of a separate crime.

The operative statutory provision states:

(c) A person whose parole is revoked shall be imprisoned for all or part of the remainder of the person's fixed term. However, the person shall again be released on parole when the person completes that remainder, less the credit time the person has earned since the revocation. The parole board may reinstate the person on parole at any time after the revocation.

* * *

(e) This subsection applies to a person who:

(1) is a sexually violent predator under IC 35-38-1-7.5;

(2) has been convicted of murder (IC 35-42-1-1); or

(3) has been convicted of voluntary manslaughter (IC 35-42-1-3).

When a person described in this subsection completes the person's fixed term of imprisonment, less credit time earned with respect to that term, the person shall be placed on parole for the remainder of the person's life.

* * *

(h) The parole board is not required to supervise a person on lifetime parole during any period in which the person is imprisoned. However, upon the person's release from imprisonment, the parole board shall recommence its supervision of a person on lifetime parole.

Ind. Code § 35-50-6-1. The statutory scheme does not appear to define "lifetime parole" or "parole." Nor does it appear that Indiana courts have defined "lifetime parole" with

respect to this statute. Insofar as this court can tell, Indiana courts have approached this

question on only one occasion:

> We do recognize, however, that the parole statutes create the possibility of a lengthier period of parole for sex offenders, when compared to the offender's fixed term of incarceration.
>
> * * *
>
> So it is theoretically possible, under Indiana's parole statutes, for a sex offender to be released from incarceration after serving a portion (or all) of his or her fixed term of imprisonment, and then receive a statutorily mandated assignment to parole for a period which exceeds the time remaining on that fixed term. The statutes do not provide a consequence [] if such a parolee violates his or her parole after the expiration of the fixed term. So if, say, such a parolee refused to take a polygraph related to his sexual history because he or she believed it would provide self-incriminating responses without the promise of immunity, could the Parole Board send the parolee to jail? Would the threat of such a period of incarceration—imposed above and beyond the now-expired original sentence—constitute an attempt at unconstitutional compulsion?

*Bleeke v. Lemmon*, 6 N.E.3d 907, 939 (Ind. 2014) (finding that resolving the question was

unnecessary given the facts of the case). Consequently, it appears that the issue is a matter

of first impression.

When deciding issues of state law, a federal court's task is "to ascertain the

substantive content of state law as it either has been determined by the highest court of

the state or as it would be by that court if the present case were before it now." *Allstate*

*Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). Indiana courts have articulated

principles of statutory interpretation as follows:

> The interpretation of a statute is not a question of fact but one of law reserved for the courts. If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning. If a statute is susceptible to multiple interpretations, however, we must try to

ascertain the legislature's intent and interpret the statute so as to effectuate that intent. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results.

In construing a particular statute, related statutes are in pari materia and should also be considered to effectuate legislative intent. Where statutes address the same subject, they are in pari materia, and we harmonize them if possible.

When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. There is a presumption that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals.

We give undefined words in statutes their plain, ordinary, and usual meaning. Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. The legislative definition of certain words in one statute, while not conclusive, is entitled to consideration in construing the same words in another statute.

*Parsley v. MGA Fam. Grp., Inc.*, 103 N.E.3d 651, 655–56 (Ind. Ct. App. 2018) (quotations and citations omitted).

The court finds that the language of the statute is clear and unambiguous. The plain language of the statute imposes "parole" on sexually violent predators. But for one exception, the statute includes no language to suggest that "parole" is not parole as it is ordinarily defined. The exception is the word "lifetime," which extends parole beyond the expiration of the sentence through the full duration of the sexually violent predator's life. The plain language of the statute thus indicates that sexually violent predators are subject to a lifetime term of parole.

The Warden argues the lifetime parole under Indiana law resembles sex offender registration requirements in that the conviction for a new crime is required for the

defendant to be sent back to prison. For this proposition, the Warden cites the Indiana statutes stating that the failure to comply with sex offender registration requirements is a felony. Ind. Code §§ 11-8-8-17, 11-8-8-18. But the parole requirements for sexually violent predators are more extensive and onerous than sex offender registration requirements. *Compare* Ind. Code § 11-8-8-7 (sex offender registration requirements) *with* Ind. Code § 11-13-3-4(g)(2) (sex offender parole requirements). For example, a sex offender parolee is prohibited from operating or working at "any attraction designed to be primarily enjoyed by children less than sixteen (16) years of age" and must consent to a search of his personal computer at any time. Ind. Code § 11-13-3-4(g)(2)(D), (g)(2)(E)(i). A sex offender parolee must also consent to the installation of monitoring devices or programs on their personal computer or device. Ind. Code § 11-13-3-4(g)(2)(E)(ii). Such a parolee may not access websites, chat rooms, or instant messaging programs frequented by children and cannot delete, erase, or tamper with information on their computer with the intent of concealing such access. Ind. Code § 11-13-3-4(g)(2)(F). The Warden does not cite any corollary to § 11-8-8-17 and § 11-8-8-18 for parole violations, and it seems unlikely that other Indiana criminal statutes would encompass violations of these types of parole terms.

The Warden also cites *Bleeke v. Lemmon*, 6 N.E.3d 907, 938-39 (Ind. 2014), and Ind. Code § 35-50-6-1(c). The Warden presumably relies on the following sentences from *Bleeke*: "However, a person whose parole is revoked shall be imprisoned for all or part of the remainder of the person's fixed term. The statute does not permit the imposition of an additional sentence to the fixed term." *Id.* at 938 (quotations and citations omitted).

But a passage that appears later in *Bleeke* (set forth in the block quote *supra* at 11) supports this court's interpretation of the statute. This later passage in *Bleeke* provides that lifetime parole could subject sex offenders to reincarceration "above and beyond the now-expired original sentence." *Id.* at 939. It further suggests that such a parole scheme might be unconstitutional, but the constitutionality of the parole scheme is irrelevant to the current inquiry. The question before the court is not whether the lifetime parole scheme is constitutional but instead whether Mr. Rucker's term of lifetime parole is a direct or collateral consequence of his conviction.

Consequently, the Warden identifies no valid enforcement mechanism for violations of the conditions of lifetime parole. Though the court need not consider the legislative intent, the statutory scheme subjects sexually violent predators (along with those convicted of murder and voluntary manslaughter) to onerous parole conditions and to the supervision of the parole board for life. Given this context, the court finds it substantially more likely that the Indiana legislature intended to subject sexually violent predators to the traditional penalty of incarceration for parole violations rather than providing no enforcement mechanism at all.

The court has already determined that the Written Notice and Waiver of Rights, ostensibly drafted by the prosecutor and not corrected by defense counsel, suggested that the trial court had some discretion to decide whether Mr. Rucker qualified as a sexually violent predator rather than resulted in an automatic classification by operation of law as set forth in Indiana Code § 35-38-1-7.5(b). The Written Notice and Waiver of Rights said

such a finding was conditional ("if") when it was automatic under the statute's plain language.[1]

Next, the court addresses whether advising Mr. Rucker that lifetime parole was possible when it was virtually certain to occur could constitute deficient performance. To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quotations omitted). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In assessing prejudice under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

---

[1] It is unclear why the prosecutor drafted this Written Notice and Waiver of Rights form to include this sentence given its seeming contradiction with the statutory language regarding automatic classification by operation of law, but review of the statute reveals two possible explanations. First, this conditional language tracks the language of the pre-2007 version of the statute, which states, "At the sentencing hearing, the court shall determine whether the person is a sexually violent predator under subsection(b)." Ind. Code § 35-38-1-7.5(d) (2006). Old practice may have died hard. Second, the current version of the statute allows the court discretion under certain circumstances to find that an individual convicted of child molestation or vicarious sexual gratification is not a sexually violent predator. Ind. Code § 35-38-1-7.5(h). This exception contemplates sex offenses involving a minor where the accused and the victim are close in age and in a dating relationship and so bears no relevance to Mr. Rucker's case.

"[A] guilty plea is voluntary and intelligent if the defendant enters the plea with full awareness of its direct consequences." *Virsnieks v. Smith*, 521 F.3d 707, 715 (7th Cir. 2008) (quotations omitted). "Direct consequences are the immediate, and automatic consequences of the guilty plea." *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir. 1989); *see Dalton v. Battaglia*, 402 F.3d 729, 733 (7th Cir. 2005); *Warren v. Richland Cnty. Cir. Ct.*, 223 F.3d 454, 457 (7th Cir. 2000). "Consequences that are not direct are collateral and have no effect whatsoever upon the length or nature of the sentence." *Jordan*, 870 F.2d at 1317 (quotations omitted).

"When a defendant considers the government's offer of a plea agreement, a reasonably competent counsel will attempt to learn all of the facts of the case and to make an estimate of a likely sentence." *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir. 1996). "It is deficient performance for an attorney to fail to provide good-faith advice about the sentencing consequences of a guilty plea." *Id.* at 939–40. "[A]lthough a defendant must be informed of the direct consequences flowing from a plea, he need not be informed of collateral consequences." *Virsnieks*, 521 F.3d at 715. Collateral consequences are "irrelevant under the Sixth Amendment; such advice is categorically excluded from analysis as professionally incompetent, as measured by *Strickland*." *Chavarria v. United States*, 739 F.3d 360, 362 (7th Cir. 2014); *Virsnieks*, 521 F.3d at 715.

Because of the substantial constraints associated with parole and its role as a substitute for incarceration, parole is a direct consequence. *Stanbridge v. Scott*, 791 F.3d 715, 720 (7th Cir. 2015) ("Parole is a direct consequence of a criminal conviction, as it is served in lieu of the remainder of a prison sentence, and imposes a significant restraint

on freedom of movement."); *Bleeke*, 6 N.E.3d at 938 ("while a parole is an amelioration of punishment, it is, in legal effect, still imprisonment"). Special parole and mandatory supervised release are also direct consequences. *See Villanueva v. Anglin*, 719 F.3d 769, 779 (7th Cir. 2013) (mandatory supervised release); *Carter v. McCarthy*, 806 F.2d 1373, 1376 (9th Cir. 1986) (mandatory parole to be served after completion of incarceration term); *Michel v. United States*, 507 F.2d 461, 463 (2d Cir. 1974) (special parole).

Mr. Rucker asserts that, though he knew that lifetime parole was a possibility, he wasn't informed that it would be automatic—that it would necessarily occur by operation of law. According to Mr. Rucker, he believed that he would be afforded an opportunity to persuade the trial court that he did not qualify as a sexually violent predator and that he would have been successful, presumably because he would argue that it never involved physical violence.

Before accepting a guilty plea, a trial court has the duty to ensure that a criminal defendant understands "the permissible range of sentences," including mandatory minimum sentences. *Dansberry v. Pfister*, 801 F.3d 863, 864 (7th Cir. 2015) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 n.7 (1969)). In the context of special parole, "it is widely accepted that a defendant should be told of [the] distinguishing characteristics [of special parole], as well as of the mandatory minimum and possible maximum parole terms." *United States v. Bridges*, 760 F.2d 151, 154 (7th Cir. 1985); *see also Rodriguez-Vega*, 797 F.3d at 786 (finding deficient performance when trial counsel advised that deportation was merely possible when it was "virtually certain" that it would occur). Mr. Rucker effectively alleges that he was not advised of the mandatory term, and the waiver of rights

he signed compounded this problem by suggesting that he could be subject either to no term of parole or lifetime parole, not that Indiana law required a mandatory life term.

In short, Mr. Rucker's sentence included a lifetime parole term. He says his trial counsel failed to advise him that the parole term would be automatically imposed rather than subject to a meaningful determination by the trial court. His parole term was a direct consequence, so, if substantiated, trial counsel's failure to advise him that it would be automatically imposed constitutes deficient performance. No other procedure corrected this advice—neither the plea colloquy nor the state form drafted by the prosecutor, and left uncorrected by defense counsel. Accordingly, the court concludes that Mr. Rucker's claim presents a valid basis for habeas relief.

The court now considers whether the evidentiary record supports Mr. Rucker's claim, including whether he was advised that he would necessarily be subjected to lifetime parole prior to entering his guilty plea. To start, the record contains Mr. Rucker's representations that he was not so advised. Further, the evidentiary record pertaining to plea negotiations and the guilty plea appears to be comprehensive. It includes correspondence between trial counsel and Mr. Rucker, correspondence between trial counsel and the prosecution, court filings, and hearing transcripts, spanning from the filing of the information to sentencing. None of these documents mentions that Mr. Rucker would automatically be subjected to lifetime parole. Indeed, only the Written Notice and Waiver of Rights signed by Mr. Rucker mentions lifetime parole, but the language of that waiver did not indicate that lifetime parole was a certainty. The absence

of any mention that Mr. Rucker would necessarily be subject to lifetime parole persuades the court that Mr. Rucker was not advised that the lifetime parole term was mandatory.[2]

Mr. Rucker must also demonstrate that there is a substantial probability that, but for this lack of information, he would not have pleaded guilty and would have insisted on going to trial. He says as much under oath. The evidentiary record is replete with contemporaneous documentation indicating Mr. Rucker's reluctance to accept the plea offer and his immediate regret thereafter, indicating a lack of confidence in the decision to plead guilty even without consideration of lifetime parole. In the months preceding the guilty plea, Mr. Rucker had described the plea offers as "ridiculous," "excessive," and "vengeful." Mr. Rucker began his efforts to invalidate the guilty plea less than one week after he entered it, and these efforts have continued ten years later to the present day. He has consistently said he would not have pleaded guilty. Further, the prosecution remarked at the hearing on the motion to withdraw the guilty plea that Mr. Rucker specifically negotiated for a sentence that did not include a term of probation, a legal consequence that a layperson might reasonably conflate with parole. *See State v. Vanderkolk*, 32 N.E.3d 775, 779 (Ind. 2015) ("parolees and probationers both share equivalent understandings that their freedom from incarceration is conditional and

---

[2] The court is cognizant that "the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. 12, 23 (2013). But, here, the court relies on Mr. Rucker's statements on an issue of which he would have personal knowledge as well as what appears to be a comprehensive record of written communications and in-court hearings, many of which reference communications between Mr. Rucker and trial counsel. Stated otherwise, the court does not rely on the absence of evidence but instead relies on the absence of any mention of lifetime parole within an abundance of evidence as corroboration for Mr. Rucker's statements.

subject to monitoring"). The evidentiary record thus indicates that Mr. Rucker entered a guilty plea with minimal confidence in his decision and particularly concerned with the continued threat of reincarceration following his release from physical custody. On this basis, the court finds that, if Mr. Rucker had been informed that he would necessarily be subjected to lifetime parole, he would not have pleaded guilty.

The court is not persuaded by the Warden's arguments to the contrary. The Warden represents that probation and lifetime parole are different based on the proposition that a probationer can be sent back to prison without a new conviction while a lifetime parolee cannot; but, as detailed already, Indiana law does not support this proposition. The Warden contends that Mr. Rucker's counteroffers included lesser offenses that would have subjected him to sex offender registration requirements and lifetime parole. However, as detailed above, the sex offender registration requirements are less onerous than lifetime parole, and Mr. Rucker likely also did not know that these lesser offenses necessarily entailed lifetime parole. Additionally, while Mr. Rucker expressed reluctance to proceed to trial, he did so within the context of a letter rejecting the plea offer, and he also expressed interest in a fast and speedy trial both before and after his guilty plea.

The Warden further suggests that proceeding to trial would have been an irrational decision as it could have subjected him to fifty years of incarceration in addition to lifetime parole. When challenging a guilty plea through an ineffective assistance of counsel claim, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S.

356, 372 (2010). In the context of this inquiry, the law cautions that "[j]udges and prosecutors should hesitate to speculate on what a defendant would have done in changed circumstances," observing that "a criminal defendant, unless mentally incompetent . . . has a right to a jury trial no matter how slight his chances of prevailing." *DeBartolo v. United States*, 790 F.3d 775, 778 (7th Cir. 2015).

Accordingly, the court has cautiously examined the record as to whether Mr. Rucker's decision to proceed to trial would have been rational. The record reflects a lack of physical evidence, contemporaneous recordings, or eyewitnesses and suggests that the trial would have turned materially on the credibility of the victim and Mr. Rucker. Though Mr. Rucker's letter of apology was incriminating, he has provided an explanation that he was unfairly manipulated into writing a false document, which the jury could credit. Though obtaining a favorable jury verdict would not have been easy for Mr. Rucker, the incriminating evidence was not so overwhelming as to call his decision irrational. The entry of a guilty plea guaranteed a minimum sentence of twenty years. *See* Ind. Code § 35-50-2-4 (2012) (sentence between twenty and fifty years for Class A felony).

Moreover, the record does not demonstrate that Mr. Rucker would have received a fifty-year sentence. The Warden cites *Davies v. State*, 730 N.E.2d 726 (Ind. Ct. App. 2000), as a factually similar case in which the defendant was sentenced to fifty years. In that case, the defendant was convicted of child molestation when a morgue technician found a rectal tear and an obliterated hymen on a 23-month-old infant who had drowned. *Id.* at 732. The defendant lived with the infant, whose mother was the defendant's girlfriend, and made statements that he had placed his finger in the victim's vagina. *Id.* at 732, 740.

21

At sentencing, there was also evidence he had engaged in other acts of sexual misconduct with the infant, a 14-year-old girl, and a 15-year-old girl. *Id.* at 742. The sentencing court found aggravators, including the risk of recidivism, that the defendant was in a position of trust with the victim, and that the defendant had other charged and uncharged acts of sexual misconduct with a minor. *Id.*

Mr. Rucker admitted that, during an overnight stay at a friends' house, he licked their eight-year-old daughter's vagina and left the room when she told him to stop. The factual basis for his guilty plea, though heinous to be sure, reflects a singular incident without the most egregious use of physical force. The court won't lessen the harm of any such molestation; but, on the spectrum, there are sadly more severe cases for which a statutory maximum sentence is reserved. *See, e.g., Hoglund v. State*, 962 N.E.2d 1230 (Ind. 2012); *Baker v. State*, 948 N.E.2d 1169 (Ind. 2011); *Vasquez v. State*, 174 N.E.3d 623 (Ind. Ct. App. 2021); *see also United States v. Jones*, 962 F.3d 956, 962 (7th Cir. 2020) ("courts should reserve the statutory maximum for unusual cases") (quotations omitted).

Further, unlike *Davies*, the record does not suggest that Mr. Rucker, a temporary houseguest, was in a position of trust over the victim or any suggestion that Mr. Rucker had committed other acts of sexual misconduct. The court cannot say with certainty what sentence Mr. Rucker would have received had he proceeded to trial, but neither the factual basis for his guilty plea nor the record as a whole suggests that he would have received the maximum sentence.

To summarize, the record establishes that, if Mr. Rucker had been informed that he would necessarily be subjected to lifetime parole, he would not have pleaded guilty

and would have proceeded to trial, regardless of whether the decision to proceed to trial was rational or wise. Likely due to the guilty plea, the record is not fully developed as to the evidence that would have been presented at trial or the considerations that would have been presented at sentencing, but, at the time of the guilty plea, Mr. Rucker's understanding of these topics would have been incomplete as well. Consequently, the court finds that, at the time of the guilty plea, the decision to proceed to trial and to risk a fifty-year sentence was not irrational.

On this basis, the court concludes that trial counsel's failure to advise Mr. Rucker that he would necessarily be subject to lifetime parole constitutes deficient performance and that, if Mr. Rucker had been so advised, he would have insisted on proceeding to trial rather than pleading guilty.

## CONCLUSION

For these reasons, the court CONDITIONALLY GRANTS the petition for *habeas corpus* (ECF 1). *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release."). The State of Indiana may retry Ryan Patrick Rucker, provided that it files appropriate documents to do so in the state trial court by July 18, 2023. The court ORDERS the Warden to file a notice here by August 17, 2023 demonstrating that either Ryan Patrick Rucker has been released and his judgment vacated, or that the State of Indiana has initiated new proceedings against him. This order terminates the case, and the court directs the clerk to enter final judgment accordingly.

SO ORDERED.

March 21, 2023

_s/ Damon R. Leichty_
Judge, United States District Court